Good morning, Your Honor. It's Philip Bronson for Mr. Birdwell. All right. Your Honor, the crux of this appeal revolves around the exclusion on hearsay grounds of certain statements made by a parent's mother a week before the killing to Mr. Birdwell. Defendants sought to admit these statements to establish provocation and to show why a parent acted in the heat of passion and in turn to establish voluntary manslaughter. That is a killing in the heat of passion. Counsel, let me ask you, was that intentional defense, self-defense? Is that the way the case was tried? Your Honor, reviewing the closing argument of defense counsel, it wasn't specifically, the theory wasn't specifically laid out of what the defense was. But in the defendant's testimony, he, what I believe the theory was that originally when the stepfather grabbed the client around the neck and he reached for the knife and he stabbed him, that was initially self-defense. But that in turn turned into provocation that the rest of the wounds were inflicted in the heat of passion and during a period of rage. And that's how I think the record is laid out. He first states that it was in essence that it was self-defense. And then he states that on the rest of the stabbings that he was unable to control himself. He was out of control. And it was during this time he was thinking to himself that you are not going to hurt my mother ever again. You're not going to hurt my sister or hurt my family again. And so the real crux of the matter, the defense, was heat of passion, though I don't think that defense counsel laid out the theory really accurately in his closing argument. And therefore, it became critical for the defense to be able to establish evidence that would have allowed the jury to have found provocation, evidence that he had learned about certain things closer within a week of the date of the killing. The other acts that were, the other acts of abuse had happened over a long period of time. But to show the defendant's complete state of mind, he had a right to have the jury hear this evidence. And it was the right of the jury to determine what weight to give to it. It was a question of what weight the jury would give to it. But it wasn't for the judge to unilaterally decide that the jury wasn't going to hear it because there was a cooling-off period of a week. The jury was still, the jury was, the defendant still had the right to have the jury hear this evidence. Now, when this case went to the court of appeal, there was some reduction in the sentence? Yeah, there was. Because originally they gave him life plus a year and then they. The jury failed to state in its verdict what degree it was. So there was a separate appeal on that ground. And the court of appeal held that since the jury hadn't made the degree of. It was second-degree murder. They found it had to be second-degree under the statute. And in a published case, they said they had no choice but to find that it was second-degree. But I believe the jury should have been able to hear this evidence in order to have found a manslaughter, not just second-degree, but in order to have arrived at the decision of manslaughter. How serious must the error be before habeas should be granted? Well, generally State evidentiary errors, plain State evidentiary errors are not grounds for habeas. But if the error impacts on the defendant's right to a fair trial. But an error may be harmless, right? Right. And then it wouldn't be. What's the test? What's the test of determining whether or not to grant habeas? How serious must the error be? As I understand it, it has to impact his right to a fair trial. If the error does not impact his right to a fair trial, then habeas wouldn't be granted. But we believe that this error is serious enough to have impacted the fair trial because. What section of the Constitution are you relying on? The Federal Constitution, the. What section? The Fourth Amendment right to due process and the Fifth Amendment right to due process. Is this a pre-EDPA or post-EDPA? Excuse me? Pre-EDPA or post-EDPA? It's pre-EDPA. Pre-EDPA. It's pre-EDPA. On that, I would submit your. Unless the Court has further questions, I would submit and reserve the rest of the time.  We'll hear from the government. May it please the Court, Deputy Attorney General Kyle Brody for the respondent. This is actually a post-EDPA case. The petition was filed after the enactment of the AEDPA. The crimes occurred before, but the petition occurred after, so it's governed by that standard. And I think that what bears noting here is that the case that this Court cited in the order granting the certificate. Why did the government object to the introduction of this testimony? It objected to it as hearsay. It really wasn't introduced for the truth, was it? You know, in looking back at it, I will concede that. It wasn't hearsay. But nevertheless, the ruling of the State Court was that it was hearsay. And under DePetris and a host of other authority, that's binding on federal habeas review, leaving the question of. I don't think so. If it's an error of law, it's not. Then you look to reasonableness and other things, but we can look at it. Well, as an error of. Respectfully, if it's an error of State law, it's. I think that that conclusion, as this Court stated in DePetris, that's binding on federal habeas review of the question on the question of its admissibility. And, of course, that doesn't resolve the constitutional question. And there still is the issue of even if excluded under State law, was the defendant's constitutional right to a fair trial thereby violated? So I certainly understand Your Honor's point that whether this is truly hearsay or not, looking back at it now, I think there could be a nonhearsay purpose for the evidence. But be that as it may, it doesn't impact his constitutional right. It was. It was introduced to show his state of mind. His attorney stated that on the record. Is that correct? I believe that's why the defense.  So that's the argument that the defendant made at trial. But, again, the State court ruled it was hearsay under California law, which can't really be reassessed here. I guess, well, we won't argue that, but I disagree with you strongly. Well, I. If they got the law wrong, they got it wrong. But what effects it had otherwise, that's a different issue. Right. And the Court's correct. And really that's the issue that is, that we're, I think, most concerned with here, which is does it impact his right to a fair trial, to present a defense. And when we look at the record of this case, it really stands in stark contrast to DePetris and other cases which have found error, constitutional error in excluding defense evidence, but particularly that case, since it was cited in the Certificate of Appealability. Because here the defense presented a vast quantity of evidence of the bad blood and the just general bad behavior of the victim. It wasn't, frankly, disputed much at trials. The defense witnesses, many of them, weren't cross-examined by the prosecutor or weren't cross-examined in a particularly challenging way. There's really no doubt, reading this record, that the victim was not a nice man. And the prosecutor conceded as much in closing argument, saying, you know, perhaps the defendant had a right to dislike him and there was certainly a lot of bad blood. There are so many witnesses testifying to the series of threats, serious threats, by the victim against Petitioner. And when we look at that evidence and then consider this small piece of evidence that was excluded, I don't think that including that evidence would have changed the quality of the defense as presented to the jury. So when we go with any of the conduct that the father engaged in, did any of that in the earlier on, did that cover the same type of behavior that the father engaged that occurred five days or whenever it was, a short period of time before they had this altercation that resulted in the murder? I mean, you know, like a baseball bat. You know what I'm talking about. Yeah, I do. And molesting the daughter and the stepdaughter, I believe. There is no sexual abuse that is testified to. The rest of the abuse by the victim, it's violent, extraordinarily violent. But no sexual abuse. There's no sexual component to it. That's correct. But where does that leave us? Well, we have the theory of the defense, which is really, as Petitioner stated, it's two-pronged. We have a self-defense theory and a heat of passion theory. Well, there's been no allegation that this would fit into a theory of self-defense. And as far as the heat of passion goes, under California law, and this is actually spelled out in the report and recommendation by the magistrate judge, I think correctly, if the defendant has a chance to cool down after the provoking incident, then the defendant cannot avail himself of a heat of passion defense. This happened, they say, the week before the killing. So we don't know. It could be five days. It could be seven. It's not clear. You know, he hears this from his mother. And, you know, the victim had her living out in a, what, a trailer in front of the property? Right. She couldn't even use the bathroom. She had to go to a gas station or behind the bushes. And then he hears this from his mother. And, you know, he remembers things that happened to him in the past. And, I mean, he just starts to, if you just use your imagination, he just starts to simmer and boil over it. But, you know, he's been abused himself for many, many years. And it's almost like, oh, he's got this post-traumatic stress disorder. But don't smile about that. Yeah, no, I'm not. He had. And then he hears this. And then he just simmers in it. And then they have this meeting. And then he just, whatever happened, he explodes. Is there any violence in his background before this? I'm not aware of any violence in his background before this. But. So, I mean, you know, the heat of passion isn't something you turn, switch on and off like a light switch. Well, but under the law, there has to be. The law doesn't set a time period. There are cases, are there not, where you've got a rather extensive so-called cooling off period. Still the heat of passion. Evidence comes in. I'm not aware of any case which would find that an event a week before the killing. Would have qualified as as a provoking event, given the defendant's behavior in the days following, including the day before the killing. And I don't mean to. I wasn't nothing in my remarks.  But the fact that he was abused isn't enough by itself to mitigate his murder to manslaughter under California law. And it's for that reason that this didn't impact his right to a defense. The any error in excluding it was harmless. And I wanted to briefly mention what the applicable standard of harmless error was. It's found in Breck v. Abramson, which is unless the error had a substantial and injurious effect on the verdict, it's harmless. There's also the recent Supreme Court case of Mitchell v. Esparza, which says that unless the state is objectively unreasonable. And it's a quote from the opinion. Unless the state was objectively unreasonable in determining that the error was harmless, then the habeas corpus petition has to be denied. But given the evidence that was before the jury and was rejected by the jury, the addition of this one additional piece would not have changed the verdict. And his right to present a defense was not impacted under the Constitution. Well, didn't the State Appellate Court find that, you know, this error, if any, was harmless beyond a reasonable doubt? Yes, the State Court did find that. All right. Any other questions? Thank you, Your Honors. All right. What do you got for us now? Just, Your Honor, where he says that he was confused. The transcript shows that I was angry, confused. I just couldn't control myself. It was more than just being confused. And the jury had — it was the sum of all of these things that the jury had the right to know. It wasn't just a small matter. It was the sum of his — of all these events. And the authority I cited for manslaughter shows that there was an extended period where the events were taking place, and it didn't have to be the — an hour before or a day before or weeks before. It's not — there's no specific time limit on that, Your Honor. All right. Thank you. The matter will stand submitted, and we'll go to the next.
judges: B. Fletcher, Pregerson, Ferguson